IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| OCWEN LOAN SERVICING LLC, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | 10 C 4692 |
|  | ) | Judge Virginia M. Kendall |
| VICTORIA L. KROENING, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This is a foreclosure action brought by Ocwen Loan Servicing LLC against Victoria L. Kroening, the mortgagor of certain residential real property. Ocwen Loan Servicing LLC's Motion for Summary Judgment is granted.

**I. The Material Undisputed Facts**

On December 13, 2007, Taylor Bean & Whitaker Mortgage Corporation ("TBW") lent Victoria L. Kroening ("Kroening") $141,000.00 subject to a Note executed in favor of TBW. (Def. Rule 56.1 Resp. ¶ 1; Pl. Exhibit A). On the same day, TBW executed a Mortgage to secure the Note on Kroening's home, 8701 Burton Rd., Wonder Lake, IL 60097. (Def. Rule 56.1 Resp. ¶¶ 6-8). On December 21, 2007, TBW secured its interest in the Note by recording the Mortgage with the McHenry County Recorder. (Def. Rule 56.1 Resp. ¶ 6). The mortgagee of the Mortgage was the Mortgage Electronic Registrations Systems, Inc. ("MERS"), which acted as a nominee for the lender, TBW. (*Id.* ¶ 9; Pl. Exhibit B ¶ (C)). Under the terms of the Note, Kroening agreed to pay 6.25

1

percent in interest at a yearly rate; to pay taxes, insurance, and any other escrow items that might apply; and to make monthly payments on the first day of every month in the amount of $868.16. (Def. Rule 56.1 Resp. ¶¶ 3-6). According to the Note, the monthly payment amount was subject to change. (*Id*. ¶ 6).

On December 17, 2009, MERS, as TBW's nominee, assigned the rights associated with the Mortgage and the Note to Ocwen Loan Servicing LLC ("Ocwen"). (*Id.* ¶ 9). The assignment of the Mortgage was signed by Scott W. Anderson, an employee of Ocwen. (*Id.* ¶ 10). Anderson had authority to assign the Mortgage on behalf of MERS by Corporate Resolution. (*Id.*; Pl. Exhibit F). According to the terms of the Assignment of Mortgage, Ocwen acquired all of TBW's interests in Kroening's property pursuant to the Mortgage. (Def. Rule 56.1 Resp. ¶ 11).

In July of 2009, Kroening defaulted on her monthly obligations and has not made a payment since that time. (Def. Rule 56.1 Resp. ¶ 15; Pl. Exhibit D). On January 25, 2010, Ocwen, by its servicer, issued a notice of default to Kroening. (Def. Rule 56.1 Resp. ¶ 14; Pl. Exhibit E). On March 25, 2010, Ocwen also sent a Grace Period Notice to Kroening so as to comply with applicable Illinois foreclosure law. (Def. Rule 56.1 Resp. ¶ 17; Pl. Exhibit G). Kroening did not cure her default, and Ocwen brought suit in this Court for a Judgment of Foreclosure and additional damages and remedies. (Def. Rule 56.1 Resp. ¶ 16; Doc. 1). In late October 2009, this Court entered a Default Judgment against Kroening for failure to appear. (Doc. 17). Within thirty days Kroening filed a Motion to Vacate the Default Judgment, which this Court granted. (Doc. 21; Doc. 24). After conducting discovery, Ocwen moved for summary judgment against Kroening. (Doc. 30). Kroening opposed summary judgment, claiming that a number of disputed issues of material fact preclude this case from summary adjudication. For the reasons stated below, the Court grants

Ocwen's Motion for Summary Judgment.

Kroening, who is represented by counsel, denies many of these facts and attempts to assert additional facts into evidence. However, Kroening failed to comply with Local Rule 56.1; all of her denials of Ocwen's material facts are devoid of citation to any record evidence. By contrast, Ocwen has complied with Rule 56.1, and supports all of its factual allegations with record evidence. Thus, all of Ocwen's factual allegations are deemed admitted. Kroening also attempts to assert additional facts into evidence.[1] None of Kroening's additional facts are supported by citations to valid record evidence as required by Rule 56.1. Her statement that an unknown investor actually owns the Mortgage and the Note is supported only by a screenshot to MERS's website. (Def. 56.1 Additional Facts ¶ 4). Kroening does not authenticate her factual claim with any affidavits or declarations. Furthermore, the screenshot is from the website of a third-party and as such is hearsay. Her statement regarding Anderson and his connection with other pending cases is also unsupported. (*Id.* ¶ 5). Kroening attaches photocopies of various signatures of Anderson on other mortgage assignment documents as the support for her claim, but these documents are also unverified and hearsay. This evidence is stricken. Finally, Kroening disputes the personal knowledge of Kyle Gardner, who's affidavit of debt Ocwen relies on, as not encompassing the entire history of the loan. (*Id.* ¶ 6). She cites to the second page of the notice of default letter as evidence that Ocwen did not obtain servicing rights to the property until December 2009. Kroening does not supply any evidence to rebut the personal knowledge set forth in Gardner's affidavit. It is undisputed that Ocwen did not

---

[1] Kroening's Statement of Additional Facts, which she calls "Disputed Issues of Material Facts," directly follows her Rule 56.1 Response, which she calls "Response to Proposed Undisputed Facts." (Doc. 40-1). The Court will refer to this Statement as "Def. 56.1 Additional Facts."

obtain the rights in the property until December 2009, but this does not demonstrate that Ocwen was unable to obtain information about the loan dating to July of 2009. Kroening's remaining six additional facts are devoid of citation to any record evidence.

**II. Choice of Law and the Standard of Review**

The parties are before the Court subject to diversity jurisdiction. Federal courts sitting in diversity apply state law to contract disputes and employ the choice-of-law principles used by the forum state. *See United States Textiles, Inc. v. Anheuser-Busch Cos.,* 911 F.2d 1261, 1269 (7th Cir. 1990) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1943)). Illinois courts routinely enforce contractual choice-of-law provision in disputes such as this one, where the Mortgage contains a governing law provision. *See Belleville Toyota v. Toyota Motor Sales, U.S.A.,* 770 N.E.2d 177, 194 (Ill. 2002) ("Generally, choice of law provisions will be honored."). The parties do not dispute that the contractual issues involved in this suit are governed by the laws of the jurisdiction in which the property is located, which is Illinois. As the Seventh Circuit has stated, "Courts do not worry about conflicts of laws unless the parties disagree on which state's law applies." *Auto-Owners Ins. Co., v. Webslov Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009).

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, on summary judgment the Court will limits its analysis

of the facts to that evidence that is supported by the parties' Local Rule 56.1 statements properly before the Court. *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, for purposes of summary judgment the Court will accept that statement as true. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

### III. Discussion

As Ocwen argues, this case is essentially a contract dispute. *See, e.g., U.S. Bank, N.A. v. Melte Willis*, No. 10 C 5454, 2011 WL 3704428, *1 (N.D. Ill. August 22, 2011). Under well-established principled of Illinois contract law, courts construe contracts to effectuate the intent of the parties. *See Virginia Surety Co., Inc. v. Northern Insurance Company of New York*, 866 N.E.2d 149, 153 (Ill. 2007) ("The cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language"). To determine the intent of the parties a reviewing court must first look to the language of the contract itself. *See Id.* (*citing Central Illinois Light Co. v. Home Insurance Co.*, 821 N.E.2d 206, 213 (Ill. 2004)). Where the language of a contract is clear and unambiguous, courts will give the terms their ordinary and popular meaning. *See Central Illinois Light Co.,* 821 N.E.2d at 213. When a contract is unambiguous it controls and must be given effect. Contract interpretation is a matter of law that is well-suited to summary adjudication. *See Covinsky v. Hannah Maine Corp.*, 903 N.E.2d 422, 425 (Ill. App. Ct. 2009).

The Mortgage and the Note prescribe, *inter alia*, how payments are to be made, the rights and obligations of the respective parties under each of the instruments, and the manner of foreclosure in the event of default. The Mortgage states in bold typeface that "MERS is the mortgagee under this Security Instrument." (*See* Pl. Exhibit B, pg. 1). The Mortgage provides:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property [described as the Kroening property].

(*Id.*, pg. 3). The Mortgage also states that:

> Borrower understands and agrees that MERS holds only legal title to the interests granted to Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(*Id.*). This clear language unambiguously grants MERS the power to assign the Mortgage and the Note. Under Illinois law a mortgagee may generally assign its rights in a mortgage, and the assignee then step into the shoes of the assignor with respect to the rights and duties of the assignor. *See Poindexter v. National Mortgage Co.,* 1995 WL 242287, *4 (N.D. Ill. April 24, 1995) (*citing Pelz v. Streator Nat'l Bank*, 496 N.E. 2d 315, 320 (Ill. App. 1986)). Illinois defines "mortgagee" more broadly than just the holder of a note of indebtedness to include "any person designated or authorized to act on behalf of such holder." 735 ILCS 5/15-1208; *accord Mortgage Elec. Registration Sys. v. Barnes*, 940 N.E.2d 118, 124 (Ill. App. Ct. 2010) (holding that MERS could foreclose on a mortgage, even if it was not the beneficial interest holder of the debt, in part because of the broad

statutory definition of "mortgagee" under Illinois law). MERS clearly fits this description, as the Mortgage not only names MERS as the mortgagee but also grants to it authority to act on behalf of the holder of the Note. Thus, as a "nominee" of TBW, MERS had the power to assign the Mortgage instrument to Ocwen.

Although it is not disputed that the Note was also assigned to Ocwen, in her brief Kroening argues that it is a disputed material fact whether Ocwen possesses the note. Although arguments presented in a brief that are controverted by the undisputed facts are not properly before the Court, it is likely true that the assignment of the Note followed the assignment of the Mortgage. However, the Assignment of Mortgage document only states that TBW's rights and interests in the Mortgage are subject to assignment. (*See* Pl. Exhibit C, pg. 1). Before the rise of mortgage securitization, traditionally "the note and the security deed traveled together." *Morgan v. Ocwen Loan Servicing LLC,* No 10 C 3555, 2011 WL 2650194 (N.D. Ga. July 7, 2011) (explaining the rise of MERS, the massive litigation that has resulted from the system, and the tricky legal issues involved in separating the mortgage instrument from the note of indebtedness). However, even if MERS did not assign the Note to Ocwen in the Assignment of Mortgage, the Note itself is a negotiable instrument, endorsed in blank, and thus subject to assignment by transfer and possession. *See* 810 ILCS 5/3-205. Under Illinois foreclosure law, a plaintiff bringing a foreclosure action must meet the particular pleading requirements of 735 ILCS 5/15-1504. Under this provision the plaintiff must attach a copy of both the mortgage and the note as exhibits. Ocwen complied with this requirement, and thus the record contains a copy of the Note submitted by Ocwen. This is evidence that Ocwen possesses the Note.

Although undisputed in fact, in her brief Kroening attacks the ability of MERS to assign the right to foreclose. Even if the Court entertains Kroening's argument, the contract's clear language

7

again unambiguously states that MERS possesses, and may assign, the right to foreclose on the mortgaged property. (*See* Pl. Exhibit B, pg. 3). Citing to no support either in fact or in law, Kroening contends that only the rights of MERS as a nominee were assigned to Ocwen, and not the rights of the lenders. Again citing to nothing, Kroening argues that as a legal matter MERS's rights as a nominee of TBW are sharply proscribed and do not include the right to commence a foreclosure action against her for default. Although there is no dispute in the record as to MERS's ability to assign the right to foreclose, the Court notes that Illinois law settles the matter. In *Mortgage Elec. Registration Sys. v. Barnes*, the Illinois Appellate Court held that, under almost identical language, MERS possessed the authority to enforce and foreclose on the mortgage when it was named as the nominee of the lender. *See Barnes*, 940 N.E.2d at 124. The language of the mortgage (which is identical in material respects to the language of the Mortgage in this case) supported the holding, as did the broad definition of "mortgagee" under Illinois foreclosure law 735 ILCS 5/15-1208, and Illinois's pleading rules, which entitle a broader set of plaintiffs than only the holders of the note of indebtedness to bring foreclose actions. *See* 735 ILCS 5/15-1504(3)(N) (stating that, in addition to the legal holder of the indebtedness, a pledgee, an agent, or a trustee may prosecute a foreclosure action). The *Barnes* court held that even if the Mortgage or the Note were beneficially owned by another entity, the language of the Mortgage conferred the right to foreclose upon MERS. *See Barnes*, 940 N.E.2d at 124. As already noted, MERS had the authority to assign its rights in the mortgage, and thus MERS had the authority to assign the right to foreclose to Ocwen notwithstanding that MERS was only TBW's nominee. *See Id.*

The Assignment of Mortgage, entered into in December of 2009, was between MERS, acting as nominee for TBW, and Ocwen. The Assignment of Mortgage provides that MERS assigns "all

its rights, title and interest in and to a certain mortgage" to TBW. (*See* Pl. Exhibit C, pg. 1). This includes the assignment of the rights described above: to foreclose on the property or take action necessary to protect the lender. The assignment was executed for MERS by Scott Anderson. Anderson is an employee of Ocwen, but was designated by Corporate Resolution as an assistant secretary and vice president of MERS, and as such had the authority to assign any mortgage naming MERS as the mortgagee. (*See* Pl. Exhibit F).

There is no material dispute as to the fact that Kroening was in default commencing in July of 2009 and continuing to the present. Kroening admits to defaulting on the Note, but she denies being in default for the entire period. However Kroening does not support her assertion with any evidence or supporting material, and therefore it cannot be credited. For its part, Ocwen submitted the affidavit of Kyle Gardner, a contract management coordinator at Ocwen, as an affidavit of debt. (*See* Pl. Exhibit D). In the affidavit of debt, Gardner attests to his knowledge of Ocwen's ownership of the loan, and his personal knowledge of, and familiarity with, Ocwen's procedures and records of loan payments, collections and delinquencies. (*See* Pl. Exhibit D, pg. 1). His knowledge of these matters is based on his job, which requires him to be familiar with such things. (*See Id.*). Gardner attests to Kroening's account, which includes information of her indebtedness and her delinquency in making payments, including the principal balance of the Note, the amount of late charges, the unpaid interest under the Note, and the amount due in reimbursement from the cost of trying to collect from Kroening. (*See Id.*, pp. 1-2). Attached to Gardner's affidavit is a printout of the regularly maintained Servicing Record, which shows Kroening's default dating back to July of 2009. (*See Id.*, pg. 4). Gardner attests that the Record is a true and correct document. Thus, from the evidence in the record there is no dispute that Kroening has been in default since July 2009.

Ocwen sent Kroening a Notice of Default by mail, dated January 25, 2010, notifying Kroening of its intention to accelerate the Note. (*See* Pl. Exhibit E). This letter conforms with the notice requirements set out in the Note and the Mortgage. (*See* Pl. Exhibit A ¶ 7; Pl. Exhibit B ¶¶ 15, 20, 22). In accordance with the notice provisions of the Note and the Mortgage, Ocwen advised Kroening that she was in default, that she had thirty days to cure the default, and that if she did not cure the default Ocwen would accelerate the Note and commence foreclosure proceedings. (*See* Pl. Exhibit B ¶ 22; Pl. Exhibit E). Kroening claims that she never received this letter, that it was untimely, and that a new acceleration letter was due on or about July 1, 2010. All of these claims are unsupported by record evidence. Ocwen obviously cannot prove that Kroening received the letter, but it attached a copy of the letter as an exhibit to its Motion for Summary Judgment. (*See* Pl. Exhibit E). Furthermore, the Note and Mortgage both provide that notices due under any of the terms of the documents must only be mailed to Kroening at the address of the mortgaged property. (*See* Pl. Exhibit A ¶ 7; Pl Exhibit B ¶ 15). The Note and the Mortgage do not provide that actual notice or delivery must be made.

Ocwen has demonstrated that a valid contract existed and Kroening has not supplied any record evidence to rebut the record offered by Ocwen. Ocwen has shown that it possessed the ability to foreclose on Kroening's property. Ocwen has also demonstrated, through its affidavit of debt, the total amount that Kroening has outstanding on the loan. Kroening admits that she defaulted and has offered no evidence to show that she has made a payment since July 2009. Kroening has not put forth any evidence upon which a reasonable jury would find for her and therefore summary judgment is granted in Ocwen's favor.

**IV. Conclusion**

For the reasons set forth above, Ocwen's Motion for Summary Judgment is granted. A Judgment of Foreclosure and Order of Sale are entered in this matter. The Judicial Sales Corporation is hereby appointed as special commissioner pursuant to 735 ILCS 5/15-1506(f) and 28 U.S.C. § 2001(a) for the purposes of the sale at a public auction of the property that is the subject matter of this action.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 28, 2011